Good morning all. We will be hearing two cases this morning. We will take a short recess between them and we will start with Adler v. Gruma Corporation, number 23-3177. We are joined remotely by Judge Rendell. Good morning, Judge Rendell and good morning to the parties. Good morning. Good morning and may it please the court. I'm Hannah Kieschnick on behalf of Plaintiff's Appellants. I'd like to reserve three minutes for rebuttal.  This court should reverse and remand for a simple but fundamental reason, that the district court did not confirm it had statutory authority to compel arbitration. In New Prime v. Oliveira, the Supreme Court held that before invoking its power to compel arbitration under the Federal Arbitration Act, the court must determine whether the act's Section 1 exemption applies. Contrary to New Prime, the district court delegated that question to the arbitrator. This was clearly wrong. By not addressing the application of the FAA, the district court also failed to follow the framework this court articulated in Harper v. Amazon for determining whether a court has authority to compel arbitration. Even though that was error on the part of the court not to consider it, can't we, looking at the FAA, make that decision on our own, look at the exemption and see if it applies? And if it does apply, then proceed to the next portion of the analysis under Harper? This court could do that, but as a court of review, the more appropriate course would be to remand for the district court to conduct the entirety of the analysis that Your Honor was referencing. That is, starting with the application of the FAA, which again, the district court didn't consider at all. So there's no written opinion for this court to review on that point. But isn't the question whether employees fall within a class of transportation workers that falls within Section 1 a question of law rather than a fact? Why would we need to send it back rather than just address that as a legal matter? This court, again, could address that as a legal matter, and there is undisputed record evidence here that would be sufficient for the court to make that determination. Let's address that, because we have the argument on the other side that there are all these other activities that your clients are engaged in other than transport of goods interstate. And even as to those goods, that their activity is purely intrastate. So what are your responses to that? Two responses, Your Honor. First, on the point of intrastate, the Supreme Court has clearly held, and this court has recognized, that workers need not actually cross state lines themselves in order for work to be considered part of the stream of, excuse me, to be part of the unbroken stream of interstate commerce. And here, looking at the undisputed record, the Adler's are a quintessential part of that stream of Grumman's products as they traveled from the Pennsylvania plant to the Adler's warehouse in New Jersey, where the Adler's directly received those products, and then loaded them onto their trucks, and then delivered them to the various retail stores along their route in the Trenton area. You say the Supreme Court has addressed that, but didn't they go out of their way in Bissonnette to express no opinion on that issue? Yes, Your Honor. The Supreme Court has not addressed whether last mile drivers like the Adler's are members of a class of workers engaged in interstate commerce. I merely meant to say that there's no state crossing lines for the workers themselves, which is one of the arguments that Grumman has advanced. The other main argument that Grumman has advanced on the application of Section 1 is that the Adler's work was, excuse me, their transportation work was incidental to the other types of work that they were performing. But to be clear, there's, again, undisputed record evidence that is Charles Adler's declaration, which appears at JA 123 and 124, in which Charles states that the Adler's were engaged in a, excuse me, that the transportation work was a large component of their work. That, again, was the receiving of Grumman's products as they traveled across state lines. It was also the loading of those products onto their trucks, and then it was the actual driving of those products to the retail stores. And that large component of work is akin to the volume of transportation work that the Supreme Court found sufficient in the Saxon case, where the cargo work, excuse me, cargo ramp supervisor not only supervised and trained, but also spent, or frequently, up to three shifts per week, spent time loading and unloading cargo herself. Let's assume that the exemption does apply. Aren't we just back to the analysis that the district court did as following up on Judge Randall's question? Doesn't that just leave us with the application of Texas law? There's a distinction between the application of Texas law and Texas arbitration law. The analysis that the district court did was a choice of law analysis to determine which state's contract law to apply to questions that might arise under Section 2 of the Federal Arbitration Act, questions like formation, enforceability, or unconscionability, what have you. The district court did not make what could be considered the predicate question under Step 2 of this court's Harper framework, which is to actually look at the party's contract and make a determination of whether they agreed to arbitrate under state arbitration law in the absence of the FAA. Go ahead, Judge Randall. Counselor, you essentially conceded in the district court that the choice of law provision here was sufficient that the parties had chosen Texas arbitration law to apply. You never raised any issue about that. You basically said, I mean, that's an underlying assumption of your argument. Your argument was, notwithstanding the fact that the parties chose Texas law, New Jersey has a keen interest here. But you never even said to the court that there was any issue. And actually looking at the clause itself that refers to arbitration laws, it wouldn't seem there would be an issue. It says, this agreement shall be governed by and construed in accordance with the laws of the state of Texas. The Federal Arbitration Act shall also apply as needed to uphold the validity or enforceability of the arbitration provision of this agreement. So you never said, wait a minute, Your Honor, there's an issue here. You basically conceded that arbitration law of Texas applied. Did you not? Why did you not forfeit this argument? So two responses, Your Honor. First, on the question of forfeiture. I think this court's recent decision in Grahalis L. makes clear that it's incumbent on a district court in order to determine that it does have a statutory basis upon which to compel arbitration, whether under the Federal Arbitration Act or under a state arbitration act. So to the extent that the plaintiffs did not affirmatively argue that the Texas Arbitration Act does not apply here, it would still be incumbent on the district court to make that determination for itself. And again, the district court didn't engage in any of the inquiry that would be required to make that determination. You're saying we're reviewing court, so you want us to send that back to the district court to make that determination? That's correct, Your Honor. Given that there wasn't an inquiry into the application of the FAA in the first instance, and there wasn't a determination that state arbitration law would provide an alternate basis to compel arbitration, it would make the most sense as a reviewing court to reverse and remand for the district court to conduct that analysis, including the contract interpretation question in the first instance. Can you refer that case that you mentioned? Could you refer me to that again? Yes, Your Honor. We submitted this in a 28-J. It's the Grahalis L. v. Amazon case. And I can provide the citation if you would like. That's all right. So that case is a good example of where a district court has failed to make this inquiry into its authority to compel arbitration. It's most appropriate to remand for the court to actually go through that analysis itself. Turning to the analysis in the second part of your question, here looking to the governing law provision in the distribution agreement, there isn't a basis to provide Texas arbitration law as a backup to the FAA. The language appears, as Your Honor was reading, at J.A. 98. The first sentence says, This agreement shall be governed by and construed in accordance with the laws of the state of Texas. This references state law generally, but it doesn't reference arbitration law specifically. And this court and the Supreme Court have interpreted similar language, referring to state law generally but not in arbitration code specifically, as not reflecting an intent to invoke a state's arbitration law or to displace the FAA as the default rules. What's your best case for that proposition? Certainly, a few cases, including Mastrobono, as well as most recently this court's case in the Oberwasher case that appears at 351 F Appendix 708. And there, this court interpreted a choice of law provision selecting Delaware law generally to not indicate or manifest an intent to arbitrate pursuant to Delaware's uniform arbitration code. Turning quickly to... Sorry, that would be true if we were looking at the first sentence standing alone. We have this additional language in the second sentence that, why can't we look to that to understand what the bounds are of the first sentence? This court absolutely should look to the second sentence, and that makes clear that the parties intended to arbitrate solely pursuant to the FAA and not also state arbitration code. What work does also do then? Also simply refers to the fact that when the FAA applies, a court considers both, is applying both federal and state law to questions that arise under Section 2 of the Act, such as formation and validity, as I was referring to previously. I see that my... But doesn't also mean, shall also, in addition to arbitration law of Texas, Federal Arbitration Act shall also apply. Why isn't that the most common sense reading? I mean, it refers specifically to arbitration. Exactly, Your Honor. The second sentence refers to arbitration. It is the only sentence in the governing law provision that does, and the only statute that it invokes is the Federal Arbitration Act. The shall also apply as needed makes sense, given, again, the relationship between federal and state law when the FAA applies. What would you insert, shall also apply in addition to what as needed? So also apply in addition to Texas arbitration law as needed. What else could it mean? I think it means very simply that as needed, if questions related to arbitration arise, the parties have selected the FAA to govern those questions. And when applying the FAA, a court must also determine what state contract law to apply to answer the prototypical questions under Section 2 of the Federal Arbitration Act. The parties here specified which state contract law they wanted a court to apply. That would be Texas contract law. But there's a distinction, and courts have recognized that distinction. If I may, two cases I think are helpful here. One, the Seventh Circuit concluded that by not referencing a state arbitration law and only referencing the FAA as a matter of Indiana contract law, the parties chose only the FAA to apply. That's the Rogers-Rousier case, which appears at 104 F. 4th, 978, again from the Seventh Circuit. As the court explained, looking to the parties' agreement, quote, the parties did not agree to arbitrate in abstract, but agreed to arbitrate subject to the FAA. As your honors questions make clear, at the very least this governing law provision is ambiguous. And to the extent this court construing this governing law provision in the first instance to answer the question raised by Step 2 of Harper, to the extent that it is ambiguous, then this court could take the route that the Ninth Circuit took in the Rittman case, the Rittman versus Amazon case, taking this agreement as ambiguous and construing the agreement against its drafter, which here would be Grouma. The court found that there was no clear intent that the parties intended to arbitrate pursuant to their Washington law, here the Texas Arbitration Act. But again, because of the number of questions that the district court simply did not reach regarding these predicate questions of its statutory authority, it would make the most sense to remand, as this court did in Grijalacel, for the court to consider these questions in the first instance. Let's add, you've gone for a couple extra minutes, let's add eight minutes to appellant's time and we'll add the full ten minutes to Eppley's. I want to direct your attention to paragraph I-2 of the distributor agreement, where it's talking about the arbitration of non-class claims. Yes. And it speaks there about any and all other claims and causes of action arising out of or relating to this agreement. It then has a parenthetical as to the agreement that says, including without limitation matters relating to this subsection regarding arbitration, matters relating to performance, breach, interpretation, meaning construction, enforceability of this agreement, et cetera. Yes. If we look at that, at the earlier provision, as defining what the parties, giving us insight into what the parties mean by the term proper noun agreement, why shouldn't we import that into subsection K as to the governing law, so that the agreement being governed by the laws of the state of Texas includes, as with the earlier parenthetical, the arbitration clause? I think because, again, that first sentence does not specifically reference, excuse me, the first sentence in the governing law provision, does not specifically reference arbitration, and so although the scope of the arbitration agreement here does reference agreement, there's no clear intent that the parties intended to override the specific invocation of the federal arbitration agreement, or excuse me, of the FAA in the second sentence. And as Your Honor indicated earlier, these two sentences really do need to be read in conjunction. By only invoking the FAA in the second sentence, the parties indicated an intent to not also arbitrate pursuant to state arbitration law. And, again, this court has interpreted the kind of general language of the first sentence to not be sufficient to manifest such an intent. Why, if the proper reading is the one that you're suggesting, what role at all does the term also or as needed play? Because it seems that you're asking us, as your colleague on the other side of the aisle has suggested, to read this as only the FAA, and the reading that you've proposed seems to make those words superfluous, commentary, if you will, but they really would be unnecessary if the reading is supposed to be that the FAA will govern. As to arbitration. I agree that the governing law provision could have been drafted more clearly, and given that it is at the very least ambiguous, I would offer my explanation for those terms, but just as a threshold matter, given that at the very least the agreement is ambiguous as to what the parties intended, the court would, whether this court reviewing in the first instance or the district court on remand, would need to construe that ambiguity against the drafter, which would be Grumman, to conclude, as the Ninth Circuit did in the Rittman case, that there's no intent to arbitrate pursuant to state arbitration law. That's a generally applicable rule of contract interpretation that would apply to how this court interprets that agreement. But turning to the specific question of the phrase, shall also apply as needed, the best I can offer is the explanation I have offered, which is as needed refers more specifically to situations when questions related to arbitration arise. There are all sorts of questions that might arise between the parties under the distribution agreement that would have nothing to do with arbitration. This second sentence is simply specifying what law the parties choose to apply to that contingency of arbitration. Oh, I apologize, I can't hear. Veteran W, you're muted. Thank you. Of course, you didn't raise this. This ambiguity was not apparent to you or the court in the first go round, correct? I mean, it was just assumed that, of course, it meant Texas. Don't we take a little bit from that, that you assumed that was the underlying assumption, was that, well, of course, Texas arbitration applies, and then FAA in addition. That was not the plaintiff's assumption in the district court, respectfully, Your Honor. They argued that the FAA did not apply because they were exempt under Section 1 of that act, and so argued that they shouldn't be compelled to arbitrate at all. They then made an alternative argument that if the district court disagreed with that Section 1 argument, that they shouldn't be compelled to arbitrate because conducting a choice of law analysis about which state's contract law to apply, the district court should apply New Jersey's contract law and find that there's no agreement in the first instance because the distribution agreement fails to comply with New Jersey's fundamental requirements that any waiver of constitutional or statutory rights be clear and unambiguous. Let's talk about that. So you believe that we need to remand also for that analysis to be redone. Is that correct? That would be correct. This court could reach that question. Again, it's reviewing de novo, and we would argue that the district court erred in its analysis, the choice of law analysis, for the reason that it overlooked key New Jersey interests when evaluating whether New Jersey has a materially greater interest in its contract law applying. At least a number of our district court cases from New Jersey have suggested that materially greater interest is, as the district court determined here, tied to mere contacts, to relationship, and that you don't pass to other considerations if that hasn't been established. What's wrong with that analysis? That analysis is wrong, and those district courts can't be reconciled with this court's precedent as well as the restatement's description of what the materially greater interest inquiry actually focuses on. So this court, in cases like HOMA and even COFACE, which Grumo relies on, have explained that the materially greater interest is not just focused on the party's geographic ties or their contacts to the state, but also whether the claims in the case are brought under that state's laws and the relationship between the state's policies. I see that my time is up. and the contract and the parties to determine as a totality which state has a materially greater interest. The district court focused solely on those geographic ties, but it overlooked that here this is a case focused on New Jersey. It's about work performed in New Jersey by New Jersey citizens who are now seeking to vindicate their rights under New Jersey law. New Jersey has an interest in its contract law applying not only to an agreement executed in New Jersey, but also because the plaintiffs are seeking to vindicate their rights for workers in New Jersey. There's another interest as well that the district court overlooked, which is the fundamental policy interest that I was referencing earlier. New Jersey's clear efforts to protect citizens from inadvertently waiving their constitutional and statutory rights. The restatement, which New Jersey's choice of law rules look to, Comment G to Section 187 indicates that a state will have a stronger interest when its relevant policies are closely related to the contract and the parties. That's the case here. New Jersey's policy interests are directly relevant to the contract and the parties. The state, again, has taken efforts to protect its citizens by requiring that contracts satisfy basic requirements for notice. If we think of the you identify three policies, are there really three or two, in particular the last two as to access to the courts and concerns about waiver of statutory rights? Don't they really converge? Yes, and the New Jersey Supreme Court and this court in the Moon versus Breathless case have in some ways collapsed the inquiry about the clear and unambiguous notice requirement, thinking of it as what are the requirements for there to be any contractual waiver with respect to both constitutional rights, which could include the constitutional right of access to the court and to a jury, as well as statutory rights, including a statutory right to bring those claims in court. Again, the district court focused solely on the party's contacts with the state. It never once even acknowledged the arguments that the plaintiffs were making regarding these fundamental interests, which are part of that materially greater interest inquiry. It acknowledged them to the extent of recognizing a concern that the statutory claim would be lost, would be forfeit. The district court misconstrued respectfully the argument that the Adlers were making. It argued, or excuse me, it interpreted them in effect to be making an effective vindication argument that they would not be able to bring their New Jersey statutory claims in arbitration if Texas law were to apply. That's distinct from the argument that the agreement here didn't satisfy basic formation requirements under New Jersey law. And so no claims belong in arbitration in the first instance. That's a distinct, it's just a distinct argument that the district court simply overlooked, much like it overlooked many of the other threshold issues here. So for those reasons, we'd ask that the court reband. I think we understand. Any further questions? Okay, we'll hear from you in rebuttal. Thank you. And 10 minutes are added to appellee's time, correct? Thank you. I'm sorry, I did not hear you, Your Honor. Just confirming that we've added 10 minutes to your time as well. Okay. Thank you, Your Honor. May it please the court. My name is Richard Reibstein, Lock Lord, representing the appellees. I'd like to address, if I could, Judge Rendell's initial question, which was, can't we just look at the FAA and make a determination as to whether it is applicable? And I would suggest strongly to the court that that is completely unnecessary. And the reason is we don't need two independent bases for arbitration, only one. And in the Harper case, they made it very clear that, and it's a heading in the decision, heading number three says, state law questions of arbitrability should be considered first. Because if, under an independent basis of arbitration authority, state law provides such, there is no need to look to the FAA. You say you characterize the argument in Harper as looking to the FAA, but what Harper actually says is before looking to facts and discovery, right? Yes. That's different than before looking to FAA as a legal matter, isn't it? Yes and no, Your Honor, because I think the questions of discovery and issues of fact are only where the application of the Section 1 exemption are not clear. So let's look at that question. Let's look at how Section 1 would apply here as to the class of workers into which the Adlers fit, as described in the record materials before us. Why does it matter that they engage in a number of other activities in addition to transporting goods that have come interstate? I believe, Your Honor, that in the Supreme Court decision in Bissonnette, the court made it very clear that the question is whether they are actively engaged in that, in the transportation of goods through channels of interstate commerce. And I believe we're not in a position, obviously, to dispute what is in the Adlers Declaration, but standing on its own, it doesn't say anything more than give 11 or 12 different things that have nothing whatsoever to do with interstate transportation and then say, oh, in addition, you know, a considerable amount of our work is in, you know, transportation. So I know, for example, that Appellant's Counsel characterized these folks as last-mile drivers. Clearly they are not. They're not Amazon type of flex drivers. They are distributors. They sell into food stores, grocery stores, convenience stores. Of course, anyone who sells is going to end up having to have some transportation in connection with their work because they have to go to a particular location, and they're selling the particular products into the stores. Hence, they've got the products on their vehicles. They drive to the stores. And then all the different things in the Adler Declaration are very clear that they have virtually nothing to do with transportation, but rather stocking, sales, taking out, you know, stales, communicating with the managers in the stores, et cetera, et cetera. The products have come from out of state. Oh, absolutely. And they're coming to the Adler's warehouse, correct? Correct. And then for the further delivery and distribution, the Adler's are transporting those goods that they have unloaded from what came interstate. They're reloading those to their own trucks and completing the delivery to the endpoint. That's correct, Your Honor. Okay. So how is that different than Southwest Airlines v. Saxon? Because Southwest Airlines in Saxon, the person who was involved in the luggage, is handling not goods but items that have gone through interstate commerce, and that's all they are doing, just handling those products, nothing else. Whereas Charles Adler makes very clear the vast array of all of his activities each day. But if I could, I would like to return to your earlier question, which is facts and discovery. I believe, and it's interesting, Your Honor, with regard to the Harper case and the, I think it's called, Grinhollis L case, they both involve Amazon, which happens to have a contract that says that the FAA shall apply. It's the only law that applies because they make very clear it applies. Why does it only apply? Because Washington State has a very interesting law that excludes all employment agreements from the Washington State law, and that is why they don't care about that in Washington. They say Washington State law doesn't apply, only the FAA. Whereas here, Texas law applies under the governing law provision, and in addition, as needed, the FAA applies. You're moving on to another argument as to the application of Section 1. I'm not sure I understand why in Southwest folks who are unloading goods on the spot, intrastate, just because those goods were transported intrastate on an air carrier, why does that differ from what we have here of the Adlers unloading goods that have come intrastate and arrived at their warehouse? Well, Your Honor, they're not unloading. Those are delivered to their warehouse. They receive it at their warehouse. They don't handle the transportation intrastate. It's just the products. For example— But those unloading for Southwest weren't flying the airplane. They were unloading the goods that arrived via aircraft. I agree, agree. So how do you distinguish those? Your Honor, the issue of whether a particular worker, group of workers, class of workers is in intrastate commerce is never decided by a particular individual themselves, but rather by the class of workers. There is no evidence that was introduced at all with regard to the class of workers, such as other distribution individuals, distributors. All we have is what Charles said about himself, and he doesn't have anything about this transportation except the one throw-in at the end, saying a substantial or considerable part of my day is in transportation. That's all we have in this record, Your Honor. There's nothing more indicating that the class of workers are in intrastate commerce. It's not a one-person-by-one-person determination. It's by a class, nothing in the record. Let's move on to the other argument. Judge Randall? I was going to say, but then you agree that the court erred by not determining the FAA application in the first instance and referring it to the arbitrator. The court erred, did it not? No, because I read Harper perhaps differently than you do, Judge, and I respect your view. But the way I view it, because there was no way for that court to make a determination under Washington state law, because Washington state law expressly does not apply according to the arbitration agreement, that's when they had no choice but to look at the FAA, whereas here you have a provision that says that the FAA, in addition to Texas law, shall apply as needed, and I believe that all you need do is to find one source of arbitration authority. So, for example, in the New Jersey Supreme Court case called Arafa, A-R-A-F-A, 243 New Jersey at 172, the court says that state law may apply to arbitration agreements even if parties are exempt under Section 1 of the FAA. They also said in that case that at page 169, there is no need for the court to mention specific state arbitration laws. So, under the circumstances, in our view, unlike the Amazon cases where Washington state law is eliminated from the contract, here you have Texas law, and it's expressed in the agreement, it provides an independent source, and in our view, there is no need for the courts to undertake considerable amount of time and effort and judicial resources to make a determination under the FAA when Texas law provides an independent source for arbitration. Indeed, that could be the only one that would apply under Arafa, and that's good enough. Mr. Rabstein, I'm looking at Harper and wondering if you can point me to where they talk about the provisions of Washington law as being the reason that we conclude that determining whether the exclusion applies is a threshold inquiry, and that that has to be addressed first. I believe I read in Harper, Your Honor, they did recite the governing law provisions. I'll take a look for it myself. And then I have for you the site to Washington state law, which excludes employment agreements from that law, which is why Amazon drafted it in that fashion. By my read, we don't seem to have focused on that as the reason that we're reaching the conclusion that determination of the Section 1 exclusion is a threshold inquiry and a legal question that should be addressed. Your Honor, I would respectfully ask, if it were to be a threshold inquiry, yet there's also authority under Texas law, then why should the court spend its time looking to a secondary source of arbitration authority in the FAA if it has an independent source under the Texas Arbitration Act? Well, that goes to the language of also and as needed. But why isn't it just as plausible to read those two sentences together to mean that Texas law applies to the agreement generally, that if that sentence were standing alone, we've held standing alone, it would not be sufficient to make clear that it's displacing the FAA. And in that second sentence indicating that the FAA also applies to the to the agreement itself. And it's applying as needed for purposes of interpreting the arbitration clause, as opposed to the general purposes of the first sentence. Why isn't that at least an equally plausible reading? And if we have two reasonable readings of how those sentences work together, then don't we revert to interpreting it against the drafter? No, Your Honor, I don't believe it is a reasonable reading because I think the words are in plain English, in very concise everyday language, that the Texas law applies, sentence one. Sentence two, the FAA also applies as needed for the enforcement or validity of the agreement. I don't believe there is anything other than a very clear articulation that Texas law also applies. So that's my view, and I do believe it's concise. I also think the Master Buono case that was referenced by the Supreme Court also supports that view, that you must read those two sentences together. They're not detached from each other. They relate to each other. The word also clearly does. And in addition, the FAA, quite frankly, would only apply under that language if needed or as needed. You don't even need the FAA here at all. And so I think those two sentences mean that the Texas Arbitration Act applies because even under ARIFA in this, you know, New Jersey State Supreme Court, it says you don't need to specifically recite a particular law. Texas law, which includes its arbitration law, applies. That's my view. We focused on the beginning of that second sentence, but the end, to uphold, as needed to uphold the validity or enforceability of the arbitration provisions of this agreement, which, and I guess this is part of your argument as well, that if there's any question under Texas law of the validity or enforceability of the arbitration provision, then FAA applies. So by referencing the need to enforce the arbitration provisions, it has to refer to the possibility that under Texas law there could be a question about the validity of the arbitration provision. I think that it does read that way because as needed, but it doesn't say shall also. It says as needed or if needed or whatever, but I do believe that there is no question but that Texas arbitration law does provide authority for the enforcement of the arbitration provision. I think you could read it, Your Honor, as saying if there was a question about Texas law, then FAA shall provide the authority. But I don't think there is any issue at all, nor has the appellants suggested that there is any question. Doesn't that turn the normal order of decision on its head? The FAA has primacy. It preempts state law. No, no, no. It's not that the FAA would be also as a tag along to state law interpreting an arbitration provision, particularly where the reference to state law is in a sentence that is of general applicability and doesn't reference an arbitration clause at all. Your Honor, I believe the issue of preemption is only those state laws that, and the Supreme Court uses these terms, conflict with or discriminate against arbitration. Texas arbitration law does not. There has never been a finding that any provision in Texas arbitration law or any Texas law at all is in conflict with, discriminates against arbitration. So the Supreme Court has made very clear that as long as there's no conflict with or discrimination against arbitration, state arbitration laws will be fully enforced. But we require that state law, that there be a clear displacement of the FAA. So if you have an agreement that references the FAA as being applicable and in a general reference to state law, how can that be a clear displacement? I don't believe there is a displacement, Your Honor. I don't think there's a case that says there's a displacement. It only says that we will not honor those provisions of state law that conflict with or discriminate against arbitration. And I don't think there's any displacement, Your Honor. Let's say we accept your reading. We still have to get to a choice of law analysis. And what do we do here with the district court's approach to what it means to have the material interests of the state where it looks only to the contacts, to the relationships, and not to the public policies of the state? So to begin with, Your Honor, each of those four district court decisions cite to a Third Circuit case called Coface, which two members of this panel were on that panel. And that also goes consistent with the way in which the district court decisions also applied it. Namely, they look at the contacts. Interestingly enough, Your Honor, there is a three-part of the Section 187 of the Restatement Second. The first part applies to what the district court and what the Third Circuit and Coface did. Second part goes to the public policy. Public policy is not referenced at all until you get to the second part or the third part. And all of these cases indicate that there is no need to ever address parts two and three of the Restatement Second, Section 187, unless you find that one state has a materially greater interest than the other. And interestingly, I heard from appellant's counsel that she said that the question is which state has a materially greater interest. That's not the issue. It's does any state have a materially greater interest. Clearly, both Texas and New Jersey have interests in this matter. Are public policies of the state a relevant consideration? I think it is focused. The public policy, the words, Your Honor, are in parts two and three. I don't think there's been any cases that are still supported today. The HOMA decision that refers to that was abrogated, and since that time, Your Honor, Coface has been the leading case in the Third Circuit. I'm sorry. Coface is a non-presidential opinion, is it not? It is, Your Honor. And we have said repeatedly to courts and parties, including in the footnote that we add to all non-presidential opinions, that it's not binding beyond all the parties in the case. HOMA, on the other hand, was a presidential opinion, right? Which was abrogated. Abrogated on other grounds. Correct. And now it's cited only for the general proposition of law that in a question about choice of law, the forum state rules should govern, and that's section 187 of the restatement. Well, to the extent that there's confusion in the district courts that are citing to a non-presidential opinion rather than a presidential opinion, why wouldn't we draw on our presidential opinion to clarify what the right test is? Your Honor, it's not a matter, in our view, of presidential or not. It's a matter of the analysis that was done in those cases in indicating that they're drawing from what they understand section 187 requires them to do. And it's only in parts two and three that section 187 talks about public policy. I guess theoretically. How about the case of Instructional Systems versus Computer Curriculum Court? Didn't they say that the court would err in excluding states' policy interests from the materially greater interest analysis? I'm sorry, could you repeat that, Your Honor? I didn't hear the whole thing. I apologize. The case of Instructional Systems versus Computer Curriculum Court. You familiar with that case? Yes, very much so. That's the starting point. Okay. And didn't it say that the court would err in excluding the policy interests from the materially greater interest analysis? Your Honor, the way I understand that, the issue is what are all of the types of contacts that a state has with the particular issue? I don't think there's anything that would be excluded, including public policy, Your Honor. Anything and everything can be included there. But it doesn't necessarily mean that public policy is going to weigh any heavier than any of the other factors because that's not what the restatement suggests or says, and that's not what the cases have ever held. We have a district court that didn't consider public policy at all, the public policies of New Jersey, including those that have been identified by your colleague. So if we conclude that the district court didn't engage in the analyses required, should we be remanding or since these are questions of law, are these things that we should proceed to address ourselves? I think, Your Honor, that they could be either, and I think that it can be before the court if it chooses to look at it de novo, if it feels that the facts and circumstances are sufficient for it to make a decision. If it remands, I think I can predict with reasonable certainty what the district court will do because it analyzed these things already, and I think it did so in a very thoughtful and cogent way. I think this court can make these decisions on its own, but I think it's within the discretion of the court. If we are to reach them, what is your response to the three public policies on the New Jersey side that have been identified, and are there countervailing Texas public policies, whether as to waiver of statutory rights or access to the courts or the Franchise Act? Well, I think you hit the nail on the head with the countervailing Texas policies. Texas does not have a public policy that is as restrictive. Their public policy is to allow arbitration provisions to be enforced with their understanding that, at least in Texas, those people who are looking at an arbitration clause understand what arbitration means, and does it actually mean that you have a jury trial? New Jersey says, no, we think it's important that you actually say it. Texas doesn't say that. It says that we will accept the fact that when you have an arbitration clause, the people who are signing it understand that it's arbitration, and arbitration doesn't have juries. So it's almost like trying to tell someone all the things that they don't get when you say that they're going to proceed in one way. Okay, well, does that mean that we don't get this, that, and that? And the answer is, in Texas, the public policy is we don't need to say all that. So I'm not suggesting that Texas public policy is right, New Jersey public policy is right, but there are very few states that take the same view as New Jersey. Most states, including, I believe, Pennsylvania, say we know what arbitration means. Any further questions? Thank you, Mr. Remstein. Thank you. Ms. Kishnick, we'll hear from you on rebuttal. Thank you. Thank you, John. Ms. Kishnick, can I ask you to step back to a question that you had at the outset about forfeiture? And you explained to the extent that the argument wasn't raised. Are you conceding that the argument was not raised before the district court as to the absence of any applicable state law, as well as the choice of New Jersey versus Texas law? If I'm understanding the distinction your Honor is drawing, the Adlers did not specifically argue that the Texas Arbitration Act did not apply to this distribution agreement. They did argue that the district court did not have statutory authority to compel arbitration because they were exempt under the FAA, but they did not advance arguments related to the Texas Arbitration Act specifically. And then to the second part, yes, they did argue that the district court should apply, excuse me, New Jersey contract law as opposed to Texas contract law under the restatement analysis. Again, by arguing that they were exempt under the FAA, it was incumbent on the district court to engage in the analysis required both under the Supreme Court's decision in Newprime, as well as this court's framework in Harper, which does begin with the application of the FAA and whether or not the class of workers is exempt from the FAA. The district court simply didn't do that. And it's surprising for my colleague on the other side to not acknowledge that it was just expressly contrary to Supreme Court precedent for the district court to delegate that question to the arbitrator. In Harper, the arbitration provision said the parties will resolve disputes through arbitration under the FAA and applicable federal law. And the choice of law clause disclaims the applicability of Washington law to arbitration issues and repeats that the FAA governs the arbitration provision. So that's a little different from here, is it not? The language in the two governing law provisions is certainly different. And that just reflects the fact that courts of appeal have diverged in their interpretation of the governing law provision that Your Honor just read in the Rittman case, in the Ninth Circuit, in the Wythaka case, in the First Circuit, indicates that this is a question of contract interpretation that requires deep engagement with what the parties actually agreed to. And that analysis just didn't occur here. And that's a problem under Harper. The court could not have compelled arbitration without first identifying some statutory basis for it to do so. Unless there are further questions? No. Mr. Serga, Judge Rendell? I'm fine. Thank you. We thank both counsel for their excellent argument today. And we will ask that a transcript be prepared of today's argument and cross it between the parties. We'll take this case under advisement. And we will now take a five-minute recess.